UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ISAIAS PITSUM,<br><br>            Petitioner,<br><br>   v.<br><br>NATHALIE ASHER,<br><br>            Respondent. | CASE NO. C20-1314-RSM-BAT<br><br>**REPORT AND RECOMMENDATION** |

Petitioner, by counsel, seeks release from immigration custody under 21 U.S.C. § 2241. Dkt. 1. For the reasons below the Court recommends the petition be DENIED and the case be DISMISSED with prejudice.

Petitioner contends he is a native and citizen of Eritrea and unlawfully entered the United States on August 19, 2019. Dkt. 7 at 1 (habeas petition), and Dkt. 16 (response to return). He claims he was ordered removed on March 11, 2020, there is a final order of removal, and has been in Immigration and Customs Enforcement (ICE) custody since his unlawful entry in 2019. *Id.* He avers "Eritrea historically refused to accept repatriation of its citizens and the ICE cannot remove petitioner." *Id.* at 2. He argues Eritrea has been designated a "recalcitrant country" because it hinders ICE removal attempts by denying or delaying removal flights. Dkt. 16 at 1. He also argues he should be released under *Zavaydas v. Davis*, 533 U.S. 678 (2001) because he has

REPORT AND RECOMMENDATION - 1

1  been in detention for more than six months and "there is no reasonable likelihood of removal in
2  the reasonably foreseeable future." *Id.* at 3.
3  The government argues the Court should deny the petition and dismiss the case. Dkt. 13.
4  The government contends petitioner is an alien subject to an administratively final order of
5  removal and lawfully detained under 8 U.S.C. § 1231(a), and petitioner's detention does not
6  violate *Zavaydas v. Davis*, 533 U.S. 678 (2001) because removal is likely to occur in the
7  reasonably foreseeable future. The government paints a different picture of petitioner's entry into
8  the United States and contacts with immigration officials.
9  The government contends petitioner first entered the country unlawfully about June 12,
10 2018 from Mexico and was arrested near Imperial Beach California. Dkt. 14, Hammer Decl. ¶ 4.
11 Petitioner admitted unlawful entry and asked for an asylum interview. Dkt. 15, Bohl Decl. ¶ 3.
12 Ex. A. Petitioner was detained and requested a bond hearing. On May 2, 2019, the Immigration
13 Judge (IJ) granted bond and released petitioner on condition he reside at his "uncle's address" in
14 Las Vegas. Bohl Decl. ¶ 4. Ex. B. Petitioner posted bond but instead of going to his uncle's
15 house, he entered Canada and applied for asylum there. Bohl Decl. ¶ 5, 8, Ex. E, p. 2.
16 Petitioner failed to appear for his June 25, 2019 removal hearing and the IJ set a new date
17 for him to appear. Hammer Decl. ¶ 6. About August 19, 2019, petitioner was arrested trying to
18 "illegally" enter the United States from Canada near Blaine, Washington. Bohl Decl. ¶ 6, Ex. C.
19 Petitioner admitted he entered illegally and was detained and transferred to the Northwest
20 Immigration Processing Center (NWIPC). When a new notice of removal proceedings was
21 served on petitioner, he requested asylum. On March 11, 2020, the IJ denied petitioner's asylum
22 claim finding him not credible and ordered petitioner removed to Sweden or Eritrea (petitioner at
23 various times claimed citizenship in different countries). Bohl Decl. ¶ 10, Ex. F.

1         On March 13, 2020 ICE met with petitioner to begin processing travel documents. The
2    application to the Eritrean Embassy could not be filed because the embassy was closed due to
3    COVID-19. Hammer Decl. ¶ 10. Other than issues related to the pandemic, ICE has "not had
4    problems obtaining travel documents in order to remove aliens to Eritrea." *Id.*
5         On June 12, 2020, ICE conducted a post order custody review (POCR) of petitioner's
6    case and determined petitioner would remain in custody as a flight risk. Hammer Decl. ¶ 10. ICE
7    contacted the Swedish Embassy and learned petitioner is a permanent resident of Sweden and
8    that of he wanted to be removed to Sweden he could apply for a travel document and pay a fee.
9    Hammer Decl. ¶ 15.  ICE presented the Swedish forms to petitioner but he refused to sign them.
10   *Id.* at ¶ 16. The Swedish Embassy also interviewed petitioner over the telephone, and he claimed
11   that he had never lived in Sweden. *Id.* ¶ 17.
12        ICE sent Sweden petitioner's fingerprints and Sweden confirmed petitioner's identity as a
13   permanent resident. *Id.* ¶ 19. Petitioner then signed travel documents for Sweden but later
14   changed his mind. *Id.* ¶ 24.  ICE informed petitioner he could be removed to Sweden; petitioner
15   stated he understood but declined to sign or date any paperwork relating to his Swedish travel
16   application. *Id.* ICE also continued to communicate with the Eritrean Embassy and was advised
17   on October 20, 2020, the embassy continues to process travel applications but that it was six
18   months behind due to the COVID pandemic.  ¶ 26.
19        With several exceptions, petitioner does not contest the accuracy of the government's
20   recitation of events, or that he is an alien subject to an administratively final order of removal
21   and lawfully detained under 8 U.S.C. § 1231(a). *See* Dkt. 16 at 2. Those exceptions include
22   Petitioner's claim he has been "cooperative," has never stated he is a "resident of Sweden," has
23   done "everything in his power to facilitate his removal," and that Eritrea will not remove him. *Id.*

REPORT AND RECOMMENDATION - 3

Petitioner contends there is no significant likelihood of removal in the reasonably foreseeable future, the Court should hold an evidentiary hearing to resolve any questions about his claim to be a "Swedish resident," and the Court should order his release.

Petitioner's detention after a final order of removal is governed by 8 U.S.C. § 1231. Under § 1231(a), the Department of Homeland Security ("DHS")[1] is required to detain a noncitizen during the 90-day "removal period," which began in December 2019. After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens, including petitioner, or to release them on supervision. 8 U.S.C. § 1231(a)(6). ICE conducted a custody review in this case on March 26, 2020 and determined petitioner should remain in custody.

ICE, however, cannot hold petitioner indefinitely. In *Zadvydas v. Davis*, the Supreme Court held § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about the individual's removal from the United States and does not permit "indefinite" detention. *Zavaydas,* 533 U.S. 678, 701 (2001). The Supreme Court determined it was "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it worked to remove the individual from the United States. *Id.* "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to release. *Id.*

---

[1] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the Board of Immigration Appeals. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

REPORT AND RECOMMENDATION - 4

Here, petitioner has been detained beyond the six-month presumptively reasonable period. His claim that Eritrea historically has refused to accept repatriation of its citizens, is recalcitrant and ICE cannot remove petitioner fails. Contrary to petitioner's claim, travel paperwork has been submitted to the Eritrea Embassy, and the application is pending. The embassy has not indicated it will refuse to process the application and ICE has submitted declarations indicating the delay in processing is due to the fact the Eritrea Embassy has shut down temporarily due to the COVID pandemic.

The COVID pandemic has delayed the processing of the travel application but that delay des not establish petitioner's detention is indefinite within the meaning of *Zadvydas*. First, the record does not indicate "there is no significant likelihood of removal." The Eritrean Embassy has never indicated it will not remove petitioner or will not issue travel documents for removal. Given the facts of this case it is significantly likely that petitioner will be removed.

There is thus no real dispute petitioner's likelihood of removal—that appears to be certain. Rather the case involves a delay due to the impact of the COVID pandemic that will ultimately lead to removal. The Court thus concludes petitioner will be removed within the reasonably foreseeable future. Detention only becomes indefinite if, for example, the country designated in the removal order refuses to accept the noncitizen, or if removal is barred by the laws of this country. *See Diouf v. Mukasey* ("*Diouf I*"), 542 F.3d 1222, 1233 (9th Cir. 2008). There is no evidence ICE will not be able to remove petitioner, or that Eritrea refuses to accept petitioner.

It is reasonable to conclude that in the foreseeable future petitioner will be removed to the Eritrea. Thus, he is not entitled to release under *Zadvydas*. Petitioner also argues the Court should order "discovery" regarding whether Eritrea will grant the travel application or will refuse

to do so as a recalcitrant country. The request should be denied. There is nothing showing ICE has not contacted the Eritrean embassy or that the government of Eritrea has indicated it will not grant the travel application. There is nothing to show that COVID has not temporarily closed the Eritrean embassy and the closure has delayed the processing of petitioner's travel documents. Discovery should also be denied regarding the issue of whether petitioner ever resided Sweden. Sweden is willing to issue a travel document, but petitioner refuses to sign the travel documents. Petitioner's disagreement over whether he ever lived in or resided in Sweden is thus irrelevant. Accordingly, the Court recommends denying petitioner's request that he be released at this juncture or that discovery be ordered.

The Court also recommends denying petitioner's alternative request for a bond hearing under *Diouf II*. Dkt. 16 at 8. In *Diouf II*, the Ninth Circuit held noncitizens subject to prolonged detention under § 1231(a)(6) are entitled to a bond hearing if removal is **not** imminent. 634 F.3d at 1082; *see also Flores Tejada v. Godfrey*, 954 F.3d 1245, 1249 (9th Cir. 2020) (reaffirming validity of *Diouf II*'s holding if removal is not imminent). Here, petitioner's travel application is pending in the Eritrean Embassy. The processing of the application is delayed due to the impact of COVID but the Court finds it cannot be said removal is not imminent and that petitioner is thus entitled to a bond hearing before an immigration law judge.

Additionally, any due process considerations created by the length of time petitioner has been in custody cut against him. Petitioner was in fact released initially. But rather than abide by the conditions of release and reside with an uncle in Las Vegas, he absconded and left the United States to Canada. When Canada would not entertain petitioner's request to stay in that country, he then was arrested again unlawfully entering the United States. His disregard of the conditions of the prior bond, and subsequent conduct establish he is a flight risk. Accordingly, any due

1 process challenge to his continued detention should be denied.

2     In sum, the Court recommends denying petitioner's requests for release or a bond hearing
3 at this juncture and recommends the habeas petition be dismissed. Petitioner's travel application
4 is pending before the Eritrean Embassy and there is no indication the Embassy will reject the
5 application. The COVID pandemic has delayed issuance of travel documents to effect removal at
6 this point, but petitioner's removal will occur within the reasonably foreseeable future.
7 Additionally, petitioner was offered by the Swedish government the opportunity to be removed
8 to that country. Petitioner thus could be removed quite expeditiously but declined to accept
9 Sweden's offer.

## OBJECTIONS AND APPEAL

11     This Report and Recommendation is not an appealable order. Therefore, a notice of
12 appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the
13 assigned District Judge enters a judgment in the case.

14     Objections, however, may be filed and served upon all parties no later than **December 4,**
15 **2020.** The Clerk should note the matter for **December 4, 2020**, as ready for the District Judge's
16 consideration if no objection is filed. If objections are filed, any response is due within 14 days
17 after being served with the objections. A party filing an objection must note the matter for the
18 Court's consideration 14 days from the date the objection is filed and served.

19 /
20 /
21 /
22 /
23 /

REPORT AND RECOMMENDATION - 7

The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed eight pages. The failure to timely object may affect the right to appeal.

DATED this 20th day of November 2020.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 8